# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMASINE MARTIN, as personal representative for the estate of Charles L. Martin, deceased,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>1. BRYCE BLISS, M.D., in his individual capacity,<br>2. STATE OF OKLAHOMA ex. rel., OKLAHOMA DEPARTMENT OF CORRECTIONS,<br>3. LINDSAY MUNICIPAL HOSPITAL AUTHORITY, and<br>4. RICHARD GRIESMAN, M.D., in his individual capacity,<br><br>　　　　Defendants. | Case No. CIV-16-080-RAW |

## ORDER

On July 12, 2016, Plaintiff as personal representative for the estate of Charles Martin filed her Amended Complaint against the Oklahoma Department of Corrections (hereinafter "ODOC"), Dr. Bliss, Lindsay Municipal Hospital Authority (hereinafter "LMHA") and Dr. Griesman, alleging that while he was in the custody of the Oklahoma Department of Corrections, Mr. Martin received inadequate and negligent medical care.

Plaintiff includes the following claims: (1) cruel and unusual punishment in violation of the Eighth and/or Fourteenth[1] Amendments to the United States Constitution pursuant to 42

---

[1] In her response to Dr. Bliss's motion to dismiss, Plaintiff states that she "only brought the Fourteenth Amendment claim as a precautionary measure in case, [by] some strange turn of events, it is later found that Mr. Martin had not been convicted, or properly convicted, and was a

U.S.C. § 1983 against Dr. Bliss and Dr. Griesman; (2) negligence and vicarious liability pursuant to Oklahoma's Governmental Tort Claims Act (hereinafter "OGTCA") against LMHA[2]; and (3) cruel and unusual punishment in violation of Article II, §§ 7 and 9 of the Oklahoma Constitution against all Defendants. Plaintiff seeks actual damages, interest, punitive damages and attorney fees. Now before the court are the motions to dismiss by Lindsay Municipal Hospital Authority ("LMHA") [Docket No 45], the Oklahoma Department of Corrections ("DOC") [Docket No. 46], Dr. Bliss [Docket No. 52] and Dr. Griesman [Docket No. 56].

*STANDARD OF REVIEW*

For purposes of the motions to dismiss, the court accepts as true all of the factual allegations in Plaintiff's Amended Petition and construes those facts in the light most favorable to Plaintiff. See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1284 (10th Cir. 2008). Of course, the court does not accept as true conclusory statements or legal conclusions. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

---

pretrial detainee." Docket No. 60, p. 9. No such argument or defense has been made by any defendant. The court, therefore, dismisses this claim unless and until a defendant raises the issue.

[2] Plaintiff included Dr. Griesman on this claim in her Amended Complaint. In her response to Dr. Griesman's motion to dismiss, Plaintiff abandons this claim against him, stating that she does not have an available claim against him under the OGTCA and that she has brought only Constitutional claims against him. She notes that as a government agent acting within the scope of his employment, he would be immune from liability under the OGTCA. As discussed below, Dr. Griesman's status – as a government agent or not – has yet to be determined, but private citizens are not subject to suit under the OGTCA. Thus, either way, Dr. Griesman would not be subject to suit under the OGTCA.

To survive the motions to dismiss, the Amended Petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiff must nudge her "claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557) (internal quotations omitted). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." Id. at 679.

> [T]he Twombly / Iqbal standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do. In other words, Rule 8(a)(2) still lives. Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.

Burnett v. Mortgage Elec. Registration Sys., Inc., 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012)).

In a case against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ." Robbins v. Oklahoma, 519 F.3d 1242, 1247, 1248 (10th Cir. 2008) (emphasis in original). Otherwise, the Amended Complaint would fail to provide fair notice and to present a plausible right to relief.

*ALLEGATIONS*

In her Amended Complaint, Plaintiff alleges that Mr. Martin suffered from diabetes and peripheral vascular disease. While in the custody of ODOC and housed in a correctional center in November of 2014, Mr. Martin noticed a blister on his foot. In December of 2014, he notified Dr. Bliss, a doctor at the correctional center, of the blister. Dr. Bliss had knowledge of Mr. Martin's medical history, including his history of diabetes-related amputation. Dr. Bliss placed Mr. Martin on antibiotics and put a Band-Aid on the blister. This blister continued to deteriorate and worsen. Mr. Martin complained to medical staff at the correctional center, but they made no changes in the treatment of the blister.

In January of 2015, Mr. Martin was sent to LMHA. Plaintiff believes that LMHA has a contract with ODOC to provide medical care to ODOC inmates. Dr. Griesman, a doctor at LMHA, examined Mr. Martin's foot and determined amputation of the toe would be necessary. On March 17, 2015, Dr. Griesman amputated Mr. Martin's toe to the first joint. Mr. Martin's toe turned black after the surgery. Dr. Griesman acknowledged that blood was not circulating to Mr. Martin's foot. Nevertheless, Dr. Griesman provided no follow-up care after the surgery. One day after the amputation, Mr. Martin was transferred back to the correctional center with instructions from Dr. Griesman to keep his foot bandaged.

After returning to LMHA, Mr. Martin's toe continued to deteriorate and blacken. Mr. Martin submitted a medical request in May of 2015. Mr. Martin was sent back to LMHA. At LMHA, Dr. Griesman did not treat the toe. Instead, Dr. Griesman sent Mr. Martin to a vascular surgeon at OU-Tulsa. OU-Tulsa medical personnel conducted tests, but Mr. Marin was not informed of the results. Mr. Martin received no treatment for his foot and was sent back to the correctional center. By May of 2015, the infection in Mr. Martin's foot had spread and two of

4

his toes were completely black. Every morning, Mr. Martin went to the medical unit to have his foot bandaged. Medical personnel at ODOC saw Mr. Martin's foot every day and did nothing to assist him beyond bandaging it. Dr. Bliss saw Mr. Martin's foot many times and did nothing to assist him beyond bandaging it.

Mr. Martin was released on June 3, 2015. He then saw doctors and was treated, including having stents placed in his legs and other surgery. Mr. Martin passed away on February 2, 2016.

## *ANALYSIS*

### *First Claim – Cruel and Unusual Punishment*

Plaintiff's first claim for relief is against Dr. Bliss and Dr. Griesman. She alleges that both doctors violated Mr. Martin's Eighth Amendment rights when they were deliberately indifferent to his serious medical needs. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal quotations and citations omitted).

#### *Dr. Griesman*

Dr. Griesman first argues that he was not a state actor and thus not subject to suit under § 1983. To state a claim under § 1983 against Dr. Griesman, Plaintiff must allege that while acting under color of state law, he deprived Mr. Martin of his "rights, privileges or immunities secured by the Constitution" or other federal law. 42 U.S.C. § 1983. Dr. Griesman is a private doctor who contracted to work for LMHA, a public trust. "In order to hold a private individual liable under § 1983 for a constitutional violation requiring state action, a plaintiff must show . . . that

5

the individual's conduct is 'fairly attributable to the State.'" Pino v. Higgs, 75 F3d 1461, 1465 (10th Cir. 1996).

An individual's conduct is "fairly attributable to the state" when: (1) the deprivation is caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible, and (2) the private party acted together with or obtained significant aid from state officials or engaged in conduct otherwise chargeable to the state. Id. "[I]n order to hold a private individual liable under § 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State." Id. (quoting Lee v. Town of Estes Park, 820 F.2d 1112, 1114 (10th Cir. 1987).

The Tenth Circuit has noted that a hospital and individual doctors as employees of the hospital are subject to liability under § 1983 for Eighth Amendment violations when the hospital contracted with the state to provide medical care to state prisoners. Parker v. Gosmanova, 335 Fed.Appx. 791, 794 (10th Cir. 2009). Here, Plaintiff has alleged that LMHA contracted with ODOC to provide medical care to prisoners. The court acknowledges that Dr. Griesman argues that he is an independent contractor, not an employee, and that he attached to his motion his "contract for surgical services." Nevertheless, the question of whether he is an "independent contractor" is a question of fact and cannot be resolved based on the pleadings. See Birdwell v. Glanz, No. 15-CV-304-TCK-FHM, 2016 WL 2726929, at *9 (N.D. Okla. May 6, 2016). Accordingly, at least at this stage, this argument fails.

Second, Dr. Griesman argues that Plaintiff's allegations do not rise to the level of "deliberate indifference" required under the Eighth Amendment. "A claim of 'deliberate

indifference' includes both an objective and a subjective component." Al-Turki v. Robinson, 762 F.3d 1188, 1192 (10th Cir. 2014). The objective component concerns the inmate's condition and whether it was "sufficiently serious" to be cognizable under the Eighth Amendment, while the subjective component concerns the Defendant's state of mind and whether he "knew of and disregarded an excessive risk to the inmate's health or safety." Id.

"A medical need is considered sufficiently serious to satisfy the objective prong if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. at 1192-93. In this case, Plaintiff has pled that after Dr. Griesman amputated his toe to the first joint, it turned black. Plaintiff also pled that Dr. Griesman acknowledged that blood was not circulating to Dr. Martin's foot. Plaintiff has sufficiently pled both the objective and subjective prongs of "deliberate indifference." Even a lay person would recognize the necessity for a doctor's attention to a black toe with no blood circulation. Plaintiff also pled that Dr. Griesman acknowledged the lack of blood circulating to the foot, thus he "knew of and disregarded an excessive risk to the inmate's health or safety." Accordingly, Dr. Griesman's motion to dismiss the first claim is denied.

### *Dr. Bliss*

Dr. Bliss first argues this action should be dismissed against him for failure to secure timely service in accordance with Federal Rule of Civil Procedure 4(m). Rule 4(m) requires a defendant to be served within 90 days after a complaint is filed. Dr. Bliss was first named in this action in the Amended Complaint filed on July 12, 2016. He was served on July 22, 2016, well within the time limitation.

Dr. Bliss next argues that Plaintiff did not sufficiently plead "deliberate indifference" under the Eighth Amendment. Dr. Bliss does not argue that Plaintiff failed to meet the objective

component, but argues that he failed to meet the subjective component. The court disagrees. Plaintiff pled that Dr. Bliss knew of Mr. Martin's medical history and saw his blackening, deteriorating foot on a regular basis, yet did nothing except bandage it. Thus, Plaintiff has sufficiently pled that Dr. Bliss "knew of and disregarded an excessive risk to the inmate's health or safety."

Finally, Dr. Bliss argues that he is entitled to qualified immunity. "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting Leverington v. City of Colorado Springs, 643 F.3d 719, 732 (10th Cir. 2011)).

As the court ruled above, Plaintiff has sufficiently pled that Dr. Bliss violated his Eighth Amendment rights. "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of the authority from other courts must have found the law to be as the plaintiff maintains." Id. Again, as the court noted above, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal quotations and citations omitted). Thus, the right at issue was clearly established. The court, therefore, cannot grant qualified immunity at this stage.

## *Second Claim – Negligence /Vicarious Liability/ OGTCA[3]*

Plaintiff's second claim for relief is against LMHA. Plaintiff alleges that Dr. Griesman was negligent and that LMHA is vicariously liable for his negligence. LMHA's defense is based on Dr. Griesman's status as an independent contractor. As held above, the issue of his status is one of fact, not to be determined at this stage. Accordingly, the court will not dismiss this claim at this stage.

LMHA also argues that this claim should be dismissed for failure to attach an affidavit in compliance with 12 OKLA. STAT. § 19.1. When a plaintiff fails to attach such an affidavit to a complaint, a court may dismiss the case without prejudice to refiling or grant the plaintiff an extension of time to file the affidavit in compliance with § 19.1. See Martin v. United States ex rel. Dept. of Health and Human Srvcs., No. 15-CV-487-CVE-TLW, 2016 WL 3566863, at *4 (N.D. Okla. June 24, 2016). The court hereby orders Plaintiff to file an affidavit in compliance with § 19.1 no later than December 30, 2016. If Plaintiff fails to file the affidavit, the court will dismiss this claim.

## *Third Claim – Bosh Claim*

Plaintiff's third claim for relief is against all Defendants for cruel and unusual punishment in violation of Article II, §§ 7 and 9 of the Oklahoma Constitution pursuant to Bosh v. Cherokee Building Authority, 305 P.3d 994 (Okla. 2013). In Bosh, the Oklahoma Supreme Court recognized a private right of action for cases of excessive force against a municipality pursuant to Article II, § 30 of the Oklahoma Constitution.

---

[3] Plaintiff alleges that she gave proper notice of her tort claim as required by 51 OKLA. STAT. § 156 and timely filed this action within 180 days of the denial of her claim as required by 51 OKLA. STAT. § 157. Docket No. 42, p. 6.

Defendants argue that the Bosh ruling was limited to claims of excessive force and does not extend to claims of deliberate indifference to serious medical needs. Plaintiff argues that the court should expand the Bosh holding because without a Bosh claim, she would have no avenue for recovery for Mr. Martin's injuries. In Perry v. City of Norman, 341 P.3d 689 (Okla. 2014), the Oklahoma Supreme Court held that a Bosh claim for excessive force "may not be brought against a governmental entity when a cause of action under the OGTCA is available." Id. at 693. The Court did not, however, extend the Bosh ruling to any claims beyond those of excessive force in violation of Article II, § 30.

The Oklahoma Court of Civil Appeals has noted that Bosh stands "for the proposition that the Supreme Court recognizes a broader scope of actionable claims based upon violations of constitutional rights." GJA v. Oklahoma Dept. of Human Srvcs., 347 P.3d 310, 316 (Okla. Civ. App. 2015). Other courts have also noted that it is "unclear how expansively the Oklahoma Supreme Court will apply the rule and rationale it adopted in Bosh." Hedger v. Kramer, No. CIV-13-0654-HE, 2013 WL 5873348, at *3 (W.D. Okla. October 30, 2013) (declining to extend Bosh to a claim for alleged "seizure" of a child against the Department of Human Services). In Hedger, the court rejected the plaintiffs' suggestion that Bosh recognizes a private right of action for all state constitutional violations or at least claimed violations of Article II, § 30. Id. The court went on to note that the Bosh court explicitly described its decision as providing a right of action for *excessive force* rather than some broader formulation. Id.

Moreover, as has been previously recognized, "no court has specifically held Bosh is applicable to claims of deliberate indifference to serious medical needs." Lawson v. Okmulgee Cnty. Criminal Justice Auth., No. 15-CV-300-FHS, 2016 WL 2864421, at *2 (May 13, 2016). This court will not so extend the Bosh ruling here. Plaintiff has failed to state a plausible claim

for relief against ODOC, Dr. Bliss, LMHA and Dr. Griesman based on Bosh. Accordingly, this claim is dismissed.

*Punitive Damages*

Both ODOC and LMHA argue that they are immune from suit for punitive damages under 51 OKLA. STAT. § 154(C). Plaintiff acknowledges that she may not recover punitive damages on the OGTCA claim, but argues that she is entitled to recover punitive damages on the Bosh claim. As the Bosh claim has been dismissed, that issue is moot.

*CONCLUSION*

For the reasons stated herein, the motion to dismiss by LMHA [Docket No 45] is DENIED as to the OGTCA claim and GRANTED as to the Bosh claim and punitive damages. The motion to dismiss by ODOC [Docket No. 46] is GRANTED. The motion to dismiss by Dr. Bliss [Docket No. 52] is DENIED as to the § 1983 claim and GRANTED as to the Bosh claim. The motion to dismiss by Dr. Greisman [Docket No. 56] is DENIED as to the § 1983 claim and GRANTED as to the OGTCA claim and the Bosh claim.

Additionally, the court orders Plaintiff to file an affidavit in compliance with § 19.1 no later than December 30, 2016. If Plaintiff fails to file the affidavit, the court will dismiss the OGTCA claim.

**IT IS SO ORDERED** this 2nd day of December, 2016.

**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**